Robert E. JOHNSON, Plaintiff, Appellant,

v.

LONG CORPORATION OF PUERTO RICO, Trading as Long Construction Company of Puerto Rico, Defendant. Appellee.

No. 5076.

United States Court of Appeals First Circuit.

Heard Feb. 5, 1957.

Decided May 8, 1957.

Guillermo Cintron Ayuso, San Juan, P. R., with whom Ralph P. Rich, Covington, Ky., was on the brief, for appellant.

William G. Grant, Atlanta, Ga., with whom Benicio Sanchez Costano, San Juan, P. R., was on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Was sufficient evidence adduced at the trial to sustain the findings of fact and conclusions of law of the District Court?

That is the question presented on this appeal from the judgment of the District Court of Puerto Rico in favor of Long Corporation of Puerto Rico, trading as Long Construction Company of Puerto Rico ("Long") in an action against it by its former employee Robert E. Johnson for alleged breach of an employment contract.

The facts as found by the District Court may be summarized as follows:

On or about October 21, 1947, Long employed Johnson as superintendent of sewer and water construction. Long at the time was engaged in large scale construction of low cost housing in Puerto Rico. The employment contract was reduced to writing December 29, 1947.[1] It contained, under the caption "Term of Employment" the following clause:

"This agreement shall remain in force so long as Long Construction Company of Puerto Rico is engaged in the construction of homes for Everlasting Development Corporation of Puerto Rico; *subject, of course, to the right of L. D. Long [president of Long] in his sole discretion, to terminate the same for any act or omission deemed by him to be detrimental to the good and welfare of said business.*" (Emphasis supplied.)

On the afternoon of December 24, 1947, the office employees of Long held a Christmas party. Long was not present. He was at that time in Charleston, South Carolina, visiting his parents for the Christmas holiday. Johnson, who was at the party, "was considerably in liquor, and at one point came up to Frederick D' A. Carpenter, at that time Territorial Director of the Federal Housing Administration and told him that Long, President of the defendant corporation, was an 'S.O.B.' and that Long did not know what he was doing."[2] On still another occasion, at the same party, Johnson had an altercation with a fellow employee in the course of which he said "everyone there was a bastard; and that the organization was full of crap, that the people present were sons of bitches".[3] Prior to this episode Johnson "had pinched the buttocks"[4] of the wife of the man with whom he had the altercation.

Subsequent to this Christmas party, on December 27, 1947, Johnson wrote a letter to one Nutter, a prospective employee of Long, "which although jocular in tone reflected on the concept of morality prevailing in the defendant organization".[5]

On December 27th Johnson left Puerto Rico for Charleston, South Carolina, to confer with Long on company business. It was on that visit that the written contract was signed. Subsequently Johnson left for New York and Chicago on company business. Long on his return to Puerto Rico on January 5, 1948, learned of the Christmas party episode and instituted an investigation of Johnson's conduct. As a result of the investigation "Mr. Long decided that plaintiff's (Johnson's) actions were detrimental to the best interests of the company, and discharged him by cablegram on January 7, 1948."

On the findings stated the District Court concluded as a matter of law that Long "had adequate grounds in law for discharging" Johnson and entered judgment dismissing Johnson's action.

Johnson advances two contentions on this appeal: (1) while his conduct at the

---

1. Johnson, under his contract, was to receive $200 weekly plus additional compensation of $2,100 per annum, plus 3% of the savings which he might effect in his work.

2. Para. 7, "Findings of Fact" of the District Court.

3. Para. 8, "Findings of Fact" of the District Court.

4. Para. 9, "Findings of Fact" of the District Court.

5. Para. 10 "Findings of Fact" of the District Court.

In this letter sent to Nutter at Honduras, Johnson said in part:

"I arranged with our office last Monday to foreward you New York Exchange in the amount of $300 to cover your travelling expenses Via Air to San Juan. Of course, your travelling expenses will include expenses of every kind, meals, hotel, taxicab, telephone, telegraph, tips and even 'tail'.

"We are not paying the expenses of wives, sweethearts, consorts, or females of any description up to the present time. However any guy who comes down here, and makes a hit with L. D. Long will be taken care of in the 'long run'".

Christmas party "might not be considered exemplary" it nevertheless was not "detrimental to the good and welfare of the business"; (2) in any event, the conduct which led to his dismissal occurred prior to the signing of the contract of December 29th and therefore could not as a matter of law provide the basis of dismissal under its terms.

In reply, Long disputes these contentions and urges further that under the express terms of the contract the right to terminate Johnson's employment was left to Long's *sole discretion* and accordingly he could do so upon the occurrence of any act or omission which *he* might deem detrimental to his business. Otherwise stated, it is Long's view that the contract made him the "exclusive judge" as to what constituted an act or omission "detrimental to the good and welfare" of his business, and the only requirement was that he act in good faith.

It is unnecessary to consider this latter proposition because in our opinion Johnson's contentions are without merit and the record affords substantial basis for the District Court's determination that "Defendant (Long) had adequate grounds in law for discharging plaintiff (Johnson)."

Putting aside Johnson's rowdy conduct at the Christmas party, his drunkenness, his altercation with a fellow employee and the pinching incident, his statement to Carpenter, the Territorial Director of the Federal Housing Administration that Long "was an S.O.B." and that "Long did not know what he was doing" and his further statement to all and sundry at the party that Long's "organization was full of crap" constituted conduct "detrimental to the good and welfare" of Long's business. If more were needed, Johnson's letter to Nutter, could well be considered a "second-helping" on that score.

As to Johnson's contention that the signed contract washed-out, as it were, his prior misconduct, we hold it is utterly without basis. It is clear from the record that the contract of December 29th merely constituted a reduction to writing of the oral contract of October 21st.

Judgment will be entered affirming the judgment of the District Court.

---

**COMPANIA PANEMENA MARITIMA SAN GERASSIMO, S.A., as owners or chartered owners of the STEAMSHIP UNION MARINER under voyage charter of August 23, 1955, Appellant,**

v.

**J. E. HURLEY LUMBER COMPANY, as voyage charterers of Steamship Union Mariner, Appellee.**

**Docket 24587.**

United States Court of Appeals
Second Circuit.

Argued April 1, 1957.

Decided April 30, 1957.

Hill, Rivkins, Middleton, Louis & War-burton, New York City (John G. Poles and Yorkston W. Grist, New York City, of counsel), for appellant.

Burlingham, Hupper & Kennedy, New York City (Herbert M. Lord, New York City, of counsel), for appellee.

Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and LEIBELL, District Judge.

LEIBELL, District Judge.

On August 23, 1955, the J. E. Hurley Lumber Company entered into a voyage charter contract with Compania Pane-

mena Maritima San Gerassimo, S.A., pursuant to which the S.S. "Union Mariner" was assigned to carry lumber from Coos Bay, Oregon, to Botwood, Newfoundland. The cargo was to be "about 2,500,000 board feet of lumber." The Union Mariner failed to lift the full 2,500,000 board feet and it is claimed that the charterer had to find other means of forwarding 188,000 board feet. The cost of forwarding that lumber, and charterer's claim for a pro rata reduction of the amount paid under the charter, plus some cross claims for dispatch and demurrage monies were claims in controversy between the parties. The charter party contained an arbitration clause as follows:

"That should any difference or dispute arise between the Owners and the Charterers, the same shall be referred to two parties in New York conversant with shipping matters, one to be appointed by each of the parties hereto, and the two so chosen shall, if they cannot agree, appoint a third party as Umpire, whose decision or the decision of any two of them shall be final and binding, and this agreement may for enforcing the same be made a Rule of Court."

Both sides named arbitrators but there was delay on the part of the owner of the vessel in naming an arbitrator and in agreeing on the issues to be arbitrated and on a date when the arbitration would proceed. As a result the attorneys for the charterer made a motion in the District Court complaining of the delay and requesting "that the Court direct the arbitrators to hold a preliminary hearing to resolve the issues in dispute and to determine whether a third arbitrator should be appointed." And "If Mr. Poles is unable to handle the matter for the owner, it is suggested that owner's proctors nominate another attorney to handle the arbitration so that it may proceed without further delay."

The motion was opposed. On May 8th, 1956, Judge Dimock endorsed the motion papers as follows:

"Motion granted to the extent that this matter proceed to arbitration eight (8) weeks from this date. So ordered."

On October 2, 1956 the arbitration finally got under way. Only two hearings were held by the arbitrators.

In the course of the above arbitration proceeding a question arose as to the meaning of the word "about," as used with the words "2,500,000 board feet of lumber" in the charter party. Apparently it was the contention of the charterer that a representation had been made by the broker for the vessel's owner, that the S.S. Union Mariner had the carrying capacity of at least the 2,500,000 board feet and not the lesser quantity that was in fact carried (187,492 board feet short); and that the representation was fraudulent. The claims asserted by the charterer in the arbitration proceeding were for money damages. The owner objected to the submission of any evidence in the arbitration proceeding on the question of fraud, asserting that a claim of that kind was not one under the charter-party; that it was in effect a claim of fraudulent inducement of the contract based on the fraud of the owner's broker.

On an application by the owner to the District Court on October 15, 1956, for an order enjoining the arbitrators from further proceedings in the arbitration, or in the alternative from receiving any proof on the question of fraud prior to the making of the contract, Judge Edelstein denied the motion in an opinion filed January 21, 1957. The matter is here on an appeal from his order.

■ It should not be the function of the District Court, after having ordered an arbitration to proceed, to hold itself open as an appellate tribunal to rule upon any questions of evidence that may arise in the course of the arbitration. If arbitrators go beyond the limits of the issues submitted to arbitration, and attempt to decide issues that are not concerned with the dispute arising under the agreement which contains the arbi-

tration clause, their action may be reviewed by the District Court when the award of the arbitrators is attacked in the manner provided in the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11.[1]

In Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004, 1005, Judge L. Hand stated:

"It is true that under section 9 of title 9 (U.S.C.A.) the successful party may enforce the award by judgment, on which execution will go under section 13. But the judgment follows automatically unless the award has been vacated under section 10, and that is an independent application. So far as the arbitration proceeding itself is concerned, the last deliberative action of the court is the appointment of the arbitrators, who thereupon take over the controversy and dispose of it. Their disposition is not, properly speaking, reviewed by the court, in spite of possible disturbance under sections 10 and 11. It seems to us therefore that the decree is final and appealable."

The decree involved in that case was one appointing arbitrators in a suit under the statute to compel arbitration.

The above quote would indicate, at least, that there should be no applications made to the District Court to review rulings of the arbitrators on the admissibility of evidence. They result only in a waste of time, the interruption of the arbitration proceeding, and encourage delaying tactics in a proceeding that is supposed to produce a speedy decision. Any vital issues can be raised when the successful party seeks to enter a judgment on the award of the arbitrators. § 10(d) and § 11(b); American Almond Prod. Co. v. Consolidated Pecan S. Co., 2 Cir., 144 F.2d 448, 451, 154 A.L.R. 1205.

■ An arbitration proceeding differs radically from a litigation in court, as Judge L. Hand emphasized in the concluding paragraph of his opinion in American Almond Prod. Co. v. Consolidated Pecan S. Co., supra:

"§ 10. Same; vacation; grounds; rehearing

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evidence partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators. July 30, 1947, c. 392, § 1, 61 Stat. 669."

"§ 11. Same; Modification or correction; grounds; order

"In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties. July 30, 1947, c. 392, § 1, 61 Stat. 669."